UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

OMAR L. TOLIVER,

    Petitioner,

v.                                            Case No. 3:16-cv-22-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

    Respondents.
_____

## ORDER

### I. Status

Petitioner Omar Toliver, an inmate of the Florida penal system, initiated this action on January 6, 2016,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). In the Petition, Toliver challenges a 2006 state court (Duval County, Florida) judgment of conviction for three counts of the sale or delivery of cocaine, one count of driving while license suspended or revoked, and one count of possession of cannabis. Toliver raises three grounds for relief. See Doc. 1 at 4-11.[2] Respondents have submitted a memorandum in opposition to the Petition. See Answer in Response to Order to Show Cause (Resp.; Doc. 10) with exhibits (Resp. Ex.). Toliver submitted a brief in reply on November 20, 2017. See Motion for Postconviction Relief (Reply; Doc. 19). This case is ripe for review.

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Procedural History

On July 20, 2006, the State of Florida (State) charged Toliver, by way of a second amended Information, with trafficking in cocaine (count one); two counts of conspiracy to traffic in controlled substances (counts two and three); attempted sale, manufacture, or deliver, or possession with intent to sell, manufacture or deliver a controlled substance (count four); three counts of the sale or delivery of cocaine (counts five, six, and seven); driving while license suspended – felony habitual offender (count eight); and possession of less than twenty grams of cannabis (count nine). Resp. Ex. B at 37-38. On July 24, 2006, Toliver entered an open plea of guilty to counts five through nine. Id. at 42-43. On August 31, 2006, at sentencing the circuit court adjudicated Toliver to be a habitual felony offender (HFO) as to counts five, six, and seven. Id. at 67. The circuit court sentenced Toliver to a term of incarceration of twenty years in prison as to count five, ten years in prison as to counts six and seven, five years in prison as to count eight, and time served as to count nine, with all such terms to run concurrent with each other. Id. at 59-68. On September 7, 2006, Toliver filed a pro se Motion to Withdraw Plea pursuant to Florida Rule of Criminal Procedure 3.170(l), in which he asserted that his counsel misadvised him as to the maximum sentence he faced if he entered an open plea. Id. at 73-75. The circuit court denied Toliver's Rule 3.170(l) Motion on October 18, 2006. Id. at 83. Toliver appealed his convictions and sentences. Id. at 98.

During the pendency of his direct appeal, Toliver, with the assistance of counsel, filed a Motion to Correct Illegal Sentence pursuant to Florida Rule of Criminal Procedure 3.800(b)(2), in which he argued his HFO sentence was illegal pursuant to Apprendi v. New Jersey, 530 U.S. 466 (2000). Resp. Ex. C at 1-5. The circuit court denied the Rule

3.800(b)(2) Motion on June 30, 2009. Id. at 6-7. Toliver then filed his initial brief in his direct appeal, raising two grounds for relief: the circuit court erred in failing to appoint a conflict-free counsel to handle his Rule 3.170(l) Motion (issue one); and his HFO sentence violated Apprendi (issue two). Resp. Ex. D. The State filed an answer brief. Resp. Ex. E. Florida's First District Court of Appeal (First DCA) per curiam affirmed Toliver's convictions and sentences on November 16, 2009, Resp. Ex. E, and issued its Mandate on December 2, 2009. Id.

On January 27, 2010, Toliver filed a pro se Motion for Postconviction Relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. G at 1-9. With the assistance of counsel, Toliver subsequently filed an Amended Rule 3.850 Motion on June 29, 2012. Resp. Ex. H at 1-26. In his Amended Rule 3.850 Motion, Toliver alleged that his trial counsel failed to convey a ten-year plea offer and misadvised him about the consequences of entering an open plea. Id. Following an evidentiary hearing, the circuit court denied Toliver's Amended Rule 3.850 Motion. Resp. Ex. G at 20-23. The First DCA per curiam affirmed the circuit court's denial of Toliver's Amended Rule 3.850 Motion without a written opinion on December 9, 2014, Resp. Ex. L, and issued its Mandate on January 6, 2015. Id.

### III. One-Year Limitations Period

This action is timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d

1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Toliver's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

4

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. As the Eleventh Circuit has explained:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable

5

application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

6

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that a petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

### B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

7

> undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). "In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

### VI. Findings of Fact and Conclusions of Law

#### A. Ground One

Toliver alleges that the circuit court erred in failing to appoint conflict-free counsel to represent him in an evidentiary hearing on his Rule 3.170(l) Motion. Doc. 1 at 4-5. According to Toliver, the circuit court's failure to appoint conflict-free counsel when he alleged an adversarial relationship with his counsel in his motion violated his due process rights. Id. at 5.

The record reflects the circuit court denied Toliver's Rule 3.170(l) Motion without appointing conflict-free counsel or holding an evidentiary hearing. Resp. Ex. B at 83. Toliver then raised the circuit court's failure to appoint conflict-free counsel in his initial brief on direct appeal. Resp. Ex. D at 6-8. The First DCA per curiam denied this claim without a written opinion. Resp. Ex. F. To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application

9

of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Toliver is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, Toliver's claim in Ground One is without merit. In Florida, a trial court is not required to appoint conflict-free counsel in Rule 3.170(l) proceedings unless an adversarial relationship exists and an evidentiary hearing is required. Flemming v. State, 204 So. 3d 950, 952 (Fla. 1st DCA 2016). Accordingly, if the record conclusively refutes the allegations raised in a Rule 3.170(l) Motion, then a trial court need not appoint conflict-free counsel. Id. Here, although Toliver alleged an adversarial relationship with his trial counsel, the circuit court determined that the record conclusively refuted Toliver's allegation and as such no evidentiary hearing was warranted. Therefore, the circuit court did not err in failing to appoint Toliver conflict-free counsel because the circuit court did not order an evidentiary hearing. See Flemming, 204 So. 3d at 952. As such, the relief Toliver seeks in Ground One is due to be denied.

**B. Ground Two**

Toliver contends that the circuit court violated his right to trial by jury when it, instead of a jury, made the findings necessary to impose a HFO sentence. Doc. 1 at 7.

Toliver raised this claim in his Rule 3.800(b)(2) Motion. Resp. Ex. C at 1-5. The circuit court denied the claim, stating:

> As acknowledged by the Defendant in his Motion, Florida courts have rejected constitutional challenges to the Habitual Felony Offender statute based on Apprendi. [See] Jones v. State, 791 So. 2d 589 (Fla. 1st DCA 2001); Saldo v. State, 789 So. 2d 1150 (Fla. 3d DCA 2001); Gordon v. State, 787

10

So. 2d 892 (Fla. 4th DCA 2001); Wright v. State, 780 So. 2d 216 (Fla. 5th DCA 2001).

Id. at 6-7. Toliver challenged the denial of this claim in his initial brief on direct appeal. Resp. Ex. D at 9-13. The First DCA per curiam affirmed the circuit court's denial as to this claim without a written opinion. Resp. Ex. F.

To the extent that the First DCA decided the claim on the merits,[4] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Toliver is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim raised in Ground Two is without merit. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt." Apprendi, 530 U.S. at 490 (emphasis added). Florida's HFO designation is based entirely on the existence of prior convictions. See § 775.084(1)(a), Fla. Stat.; see also Dinkens v. State, 976 So. 2d 660, 662 (Fla. 1st DCA 2008) (holding "the habitual felony offender statute is based solely on prior convictions and therefore does not require a jury

---

[4] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

determination pursuant to Apprendi."). Accordingly, as Apprendi specifically exempts prior convictions from its holding, Toliver's claim is without merit. Apprendi, 530 U.S. at 490; see also Dinkens, 976 So. 2d at 662 (noting arguments that Apprendi applies to Florida's HFO sentencing scheme have "been repeatedly rejected by Florida courts."). Therefore, relief on the claim raised in Ground Two is due to be denied.

## C. Ground Three

As Ground Three, Toliver maintains that his trial counsel was ineffective for failing to convey a plea offer and misinforming Toliver about the maximum sentence he faced. Doc. 1 at 9-11. According to Toliver, counsel failed to inform him that he faced a possible life sentence as a HFO and failed to timely inform him of a ten-year plea offer. Id. at 9-10. Toliver contends that had he known he was subject to being sentenced as a HFO and facing a possible life sentence, he would have accepted the ten-year plea offer had it been properly presented to him. Id. at 10-11.

Toliver raised this claim in his Amended Rule 3.850 Motion. Resp. Ex. H at 3-7. Following an evidentiary hearing, the circuit court rejected this claim stating:

> Defendant claims that his trial counsel was ineffective because they failed to properly advise him in connection with a State offer to plead guilty in exchange for a 10 year sentence. There is no dispute that on or about December 21, 2005, the State communicated this offer to Defense counsel and that the State also communicated that the offer would remain open only through the next court date. There is also no dispute that Defense counsel at that time, Amy Grass-Gilmore, advised the Defendant about the offer and that the next court date was scheduled for January 13, 2006. Prior to that court date, Ms. Grass-Gilmore left the Public Defender's Office to go into private practice and Defendant's case was turned over to Melina Buncome-Williams. Ms. Buncome-Williams testified that she was aware of the offer and spoke with the Defendant about it on January 11, 2006. She also testified that she spoke with the Defendant about the offer

remaining open for the next court date only and there is nothing to dispute this testimony as well.

Ms. Buncome-Williams also testified that the Defendant did not want to plead to trafficking and that he essentially rejected the State's offer. The Defendant disputes this and testified that he was never given the chance to accept the offer on January 13, 2006 because the State Attorney handling the case unilaterally withdrew the offer before his appearance in court that day. The thrust of Defendant's argument, therefore, is that both attorneys handling his case were ineffective because they failed to advise him that the State could withdraw their offer at anytime before he appeared in court on January 13, 2006.

. . . .

The Defendant has failed to demonstrate that trial counsel's performance fell below the standard of reasonable professional assistance in giving advice concerning the State's 10 year offer. First, the evidence at the hearing that trial counsel advised the Defendant about the offer and the Defendant simply rejected it on the date in question was more credible and persuasive than the Defendant's testimony that the State withdrew the offer before Defendant had a chance to accept it. "[D]efense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused," and trial counsel fulfilled that duty. There was no evidence that counsel gave the Defendant inaccurate advice about the terms and conditions of the offer, nor was there any evidence that trial counsel, in any way, influenced the Defendant's decision to decline the 10 year offer. In fact, the Defendant testified that he wanted to accept the offer on the date in question and was only prevented from doing so by actions on the part of the Assistant State Attorney, not his own attorney.

Assuming for the sake of argument that the Assistant State Attorney handling the case did withdraw the offer before the Defendant came to court on January 13, 2006, as Defendant testified, the fact that trial counsel did not advise the Defendant that the State could unilaterally withdraw the offer at anytime before that court date does not rise to the level of ineffective assistance of counsel. The Supreme Court in

13

> Missouri v. Frye[5] expressly declined to further "define the duty and responsibilities of defense counsel in the plea bargain process" over and above the straightforward duty to communicate favorable offers to the accused. However, the court has no trouble in this case finding that trial counsel was not required to anticipate that the State Attorney handling the case would, on their own volition, change their mind and withdraw any given offer before the date of the scheduled deadline to accept it. If the offer was actually withdrawn in the manner that the Defendant says it was, there as no evidence presented as to why the Assistant State Attorney made that decision. Trial counsel should not be required to anticipate the subjective motivations of the prosecutor. Without evidence of some factual development that occurred between the date of the offer and the deadline to accept it that should have put Defense counsel on notice of the possibility that the offer could be withdrawn, Defense counsel was not ineffective simply because they took the prosecutor's representation about the deadline at face value.
>
> Based on the foregoing findings of fact and conclusions of law, the Defendant's motion is **Denied**.

Resp. Ex. G at 20-23 (footnote and citations omitted). The First DCA per curiam affirmed the circuit court's denial of this claim without a written opinion. Resp. Ex. L.

To the extent that the First DCA decided the claim on the merits,[6] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of

---

[5] Missouri v. Frye, 566 U.S. 134 (2012).
[6] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

14

the evidence presented in the state court proceedings. Thus, Toliver is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim raised in Ground Three is without merit. The Court notes that "a determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Court finds Toliver has failed to provide any clear and convincing evidence rebutting the presumption of correctness of the circuit court's factual finding that counsel's testimony at the evidentiary hearing was more credible than Toliver's testimony. As such, the Court presumes counsel's testimony was credible. See 28 U.S.C. § 2254(e)(1).

At the evidentiary hearing on Toliver's Amended Rule 3.850 Motion, both of his attorneys testified that they conveyed the ten-year plea offer and the expiration date of that offer to Toliver. Resp. Ex. G at 43-45, 52. Likewise, Toliver testified that both attorneys had conveyed the plea offer to him as well as the expiration date. Id. at 75-78. Moreover, both attorneys testified that they discussed the possibility of a HFO sentence with Toliver, Id. at 46-47, 53-54, 62-64, and Toliver himself admitted to knowing there was a potential for a HFO sentence at his arraignment. Id. at 76. Notably, Ms. Buncome-Williams testified that she informed Toliver on the day the offer expired that she was ready to argue a motion if he chose not to accept the offer, and Toliver told her "to go ahead and have the bond reduction motion heard because he intended to hire private counsel." Id. at 54. This conversation indicates that Toliver rejected the plea outright. These facts conclusively refute Toliver's allegations in his Petition that counsel failed to convey the

15

ten-year plea offer and that counsel failed to inform Toliver of the sentencing consequences he faced.

Even assuming Toliver's evidentiary hearing testimony was credible, he still cannot demonstrate deficient performance. According to Toliver, on the day the offer was to expire, the State withdrew the offer before he could accept it. Id. at 75, 79. As the circuit court noted, counsel had no control over the State's unilateral decision to rescind the offer prior to the previously discussed expiration date. See Bass v. State, 932 So. 2d 1170, 1172 (Fla. 2d DCA 2006) (noting that "a defendant is not entitled to a plea offer from the State; that is a discretionary matter entirely within its executive domain."). As such, counsel cannot be deemed deficient for thinking the State would abide by its stated deadline. Based on these facts, the Court finds Toliver has failed to demonstrate deficient performance. Accordingly, the claim raised in Ground Three is due to be denied.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Toliver seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Toliver "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. If Toliver appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 31st day of October, 2018.

MARCIA MORALES HOWARD
United States District Judge

Jax-8

C: Omar L. Toliver, #J31806
Jennifer Moore, Esq.